IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-663-FL

| | | |
|---|---|---|
| TYRONE LUMLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TOWN OF KNIGHTDALE, NORTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court upon defendant's motion to dismiss the complaint under Rule 12(b)(6) (DE 14). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff initiated this constitutional tort suit against his former employer November 17, 2023. Defendant moved to dismiss the complaint February 20, 2024, after which plaintiff amended his complaint March 12, 2024, asserting Title VII claims for religious discrimination, wrongful termination, and retaliation, as well as claims under 42 U.S.C. § 1983 for violations of the Free Exercise, Free Speech, and Equal Protection Clauses. Plaintiff requests declaratory judgment, reinstatement or alternatively front-pay, a permanent injunction ordering defendant to purge plaintiff's personnel files of allegedly derogatory or false information and to provide training for town personnel on Title VII, as well as back pay, compensatory damages, and costs and fees.

1

Defendant filed the instant motion dismiss March 26, 2024, for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

The facts alleged in the complaint[1] are as follows. Plaintiff is a professional firefighter and resident of Johnston County, North Carolina. Defendant is a municipal corporation in Wake County, managed by a town manager appointed by the mayor and city council.

Defendant announced a COVID-19 vaccination policy in "late summer 2021" (the "policy"). (Compl. (DE 12) ¶ 23). The policy applied to all employees, regardless of a given employee's duties. Defendant attempted to incentivize employees to receive vaccination voluntarily through vacation time and then monetary bonuses, and penalized non-compliant employees by retracting leave time.

Defendant's procedures for processing an accommodation request involved asking "highly detailed" questions, to which an employee had to respond within a month. (Id. ¶ 33). Religion-based accommodation requests had to be accompanied by "copies of religious texts substantiating the nature of the employee's religious beliefs," and letters from an employee's religious leaders. (Id. ¶ 36). Any accommodation request had to be accompanied by an attestation to what plaintiff alleges were "certain misleading and blatantly false factual assertions" about COVID. (Id. ¶ 44). Plaintiff believed the policy and these requirements were onerous, and complained to the town manager.

Plaintiff alleges he holds sincere Christian religious beliefs that forbid him from receiving vaccination, because plaintiff believes that the COVID-19 vaccines were manufactured with aborted fetal cells, and that he believes the "human body is a temple" that cannot be altered by

---

[1] All references and citations to the complaint in this order are to the operative version of the complaint at docket entry (DE) 12.

2

Case 5:23-cv-00663-FL    Document 19    Filed 08/06/24    Page 2 of 17

vaccines. (Id. ¶¶ 49–50, 53). Plaintiff, then an employee of defendant, accordingly requested a religious accommodation and complied with all of defendant's procedural requirements. He further offered to comply with the policy's objectives in other ways, such as through testing and personal protective equipment ("PPE") at his own expense.

When COVID first began, defendant's first responders used methods other than vaccination to protect themselves and individuals receiving treatment. (Id. ¶ 98). Medical providers in Wake County, who would have treated the same persons for whom plaintiff provided first responder services, were granted religious and non-religious accommodations by their employers. (Id. ¶ 102).

Defendant had three fire stations, two of which were altered to permit each firefighter to socially distance. Plaintiff proposed a change in the layout of his posted station to permit social distancing, which request was approved and implemented. (Id. ¶ 106).

Defendant denied plaintiff's request for religious accommodation, and the town manager was personally involved with this decision. (Id. ¶¶ 59–60). Defendant allegedly refused to engage in an interactive process regarding any potential accommodations. (Id. ¶ 61). At a meeting, the town manager told plaintiff he did not know the effectiveness of vaccination. (Id. ¶ 63).

Defendant denied all requests for religious accommodations, but did grant some accommodations under the Americans with Disabilities Act ("ADA"). (Id. ¶ 65). Employees granted ADA accommodations had the same level of interaction with the public and co-workers as employees who requested religious accommodations. (Id. ¶ 70). Defendant never explained to plaintiff why it refused his accommodation, or why his proposed alternatives were unacceptable. (Id. ¶ 75).

Plaintiff's request officially was denied December 7, 2021. Defendant informed plaintiff he would be placed on leave immediately, and that he had to become vaccinated by December 14, 2021, or else be terminated. Plaintiff instead resigned prior to December 14, 2021. (Id. ¶¶ 76–77).

Defendant asserted that all of its first responders had to be vaccinated, but continued to rely upon first responders from neighboring counties and municipalities as needed pursuant to an inter-municipal agreement. According to the complaint, these other local government units did not have vaccine mandates, or had mandates that permitted accommodations for first responders. Defendant allegedly relied upon unvaccinated first responders under this agreement. (Id. ¶¶ 89–91).

## COURT'S DISCUSSION

A.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.   Analysis

Defendant argues that all of plaintiff's claims are inadequately pleaded. The court agrees as to some, but not as to others.

1.   Title VII Religious Discrimination (Count I)

Plaintiff's first claim is for "failure to accommodate and/or disparate treatment religious discrimination." (Compl. 28). The parties clash over numerous facets of this claim, but the court concludes it survives defendant's motion.

At the outset, defendant raises two threshold questions.

First, defendant questions whether a "failure to accommodate" religion claim is cognizable under Title VII. (See Def's Br. (DE 15) 10–11). This question is mere semantics, because such claim is cognizable as a species of Title VII disparate treatment, whether or not also as a standalone claim. See Groff v. DeJoy, 600 U.S. 447, 457 (2023) (recognizing that under Title VII, employers are sometimes required to "make reasonable accommodations to the reasonable religious needs of employees"); EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008) (similar).

Second, defendant argues that the scope of plaintiff's EEOC charge prohibits him from advancing any allegations based on the town's accommodation process. (See Def's Br. 9). The court agrees. The scope of an EEOC charge generally determines the permissible scope of later litigation. See Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). "Factual allegations in the administrative charge [that are] reasonably related to the factual allegations in the formal litigation" are sufficiently related under this principle. Id.  In contrast, litigation that attempts to introduce theories of discrimination on different grounds, such as sex rather than race, or a different theory of adverse action, falls outside this rule. Id.  As most relevant here, an EEOC charge

5

alleging a certain manifestation of discrimination is not sufficiently connected to complaints under other forms of discrimination. Id.

Plaintiff's EEOC charge falls within this last holding. Chacko held that an EEOC charge alleging discriminatory failure to promote could not encompass litigation for pay discrimination. Id. Here, plaintiff's EEOC charge complained only of failure to grant him a religious accommodation; it did not mention any alleged defects in the accommodation consideration process. (See Def's Ex. 3 (DE 14-3) 1).[2] Plaintiff's Title VII claim therefore must be cabined to the decision to deny him a religious accommodation. However, this ruling does not affect the substance of any issues presently before the court upon defendant's motion.

Having disposed of these two threshold questions, the court proceeds to the substance of plaintiff's Title VII claim.

To plead a failure to accommodate religion claim, as a species of disparate treatment under Title VII, a plaintiff must show 1) that he has a bona fide religious belief that conflicts with an employment requirement; 2) that the plaintiff informed the employer of the belief; and 3) that the employee suffered an adverse employment action for failure to comply with the conflicting employment requirement. See Firestone Fibers & Textiles Co., 515 F.3d at 312. If a plaintiff establishes these elements, the burden shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship. Id. "Undue hardship" is shown when a burden is substantial in the overall context of an employer's business; it demands more than de minimis burden. Groff, 600 U.S. at 468.

---

[2] The court considers the EEOC charge without converting the motion into a Rule 56 motion because it was relied upon in the complaint and plaintiff does not challenge its authenticity. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); (Compl. ¶¶ 130, 132).

6

Case 5:23-cv-00663-FL   Document 19   Filed 08/06/24   Page 6 of 17

Defendant challenges the bona fide religious belief, adverse action, and undue hardship portions of this analysis. The court addresses each in turn.

      a.      Religious Belief

Title VII imposes no theological orthodoxy requirement; it protects religious beliefs whether others, or courts, believe them "correct[]" or even "plausib[le][.]" U.S. EEOC v. Consol Energy, Inc., 860 F.3d 131, 142 (4th Cir. 2017). Here, the complaint permits a plausible inference that plaintiff's objections to the policy were religious by pleading that plaintiff believes the COVID vaccines to be spiritually unclean based on his religion, and that his religion prohibits introduction of spiritually unclean substances into the body. (Compl. ¶¶ 49–51).

Defendant argues that plaintiff's objections really went to the medical effectiveness of the vaccines, not to their compatibility with plaintiff's religion. (See Def's Br. 12–15). Defendant cites to cases in which courts dismissed nominally religious claims against vaccine mandates, involving complaints with negligible, if any, connection to religion. For example, in one case, plaintiffs simply "failed to allege . . . what religious beliefs they maintain." See Menk v. MITRE Corp., ___ F. Supp. 3d ___, 2024 WL 327087, at *18 (D. Md. 2024). The others were along similar lines. See, e.g., Winans v. Cox Auto., Inc., 669 F. Supp. 3d 394, 401 (E.D. Pa. 2023); Kiel v. Mayo Clinic Health Sys. Se. Minn., 685 F. Supp. 3d 770, 783–84 (D. Minn. 2023), rev'd sub nom. Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894 (8th Cir. 2024); Jackson v. Tyson Foods, Inc., No. 5:23-cv-5102, 2023 WL 9097854, at *6 (W.D. Ark. Nov. 27, 2023).

Defendant's argument, and the cases it cites, are inapposite to the present allegations. Plaintiff does not allege merely a negligible or nominal connection to religion. (Compl. ¶¶ 49–51). Further, the court disagrees with the premise of defendant's argument that the presence in the complaint of other, non-religious objections to the policy defeats this element. Plaintiff argues

7

persuasively that he is caught on the horns of a pleading dilemma: that presenting non-religious scientific allegations is necessary to intelligibly plead a lack of undue hardship, while religious objections are required for the bona fide religious belief requirement. (See Pl's Br. 22–23). The court cannot conclude that the former drowns out or overrides the latter.

      b.      Adverse Action

Defendant contends that because plaintiff resigned rather than be fired for failure to comply with the policy, plaintiff's Title VII claim fails, on grounds that defendant did not make his working conditions objectively intolerable. The court disagrees.

Putting an employee to the choice of facing discipline or complying with an employer's orders at perceived spiritual cost qualifies as an objectively intolerable situation sufficient to render a resignation a constructive discharge, legally equivalent to a termination. See Consol Energy, Inc., 860 F.3d at 144–45. Plaintiff pleads such a choice here, (see Compl. ¶¶ 78–81), so this element is met.

      c.      Undue Hardship

Finally, defendant argues that any accommodation of plaintiff's religious beliefs would have posed an undue hardship, thereby relieving it of any Title VII liability. The court disagrees.

Plaintiff proposed several accommodations, including rearrangement of his fire station post to permit social distancing, and PPE and regular testing at his own expense. (Compl. ¶¶ 57, 106; see also id. ¶¶ 89–91). These permit a plausible inference that accommodation of plaintiff's religious beliefs would not impose undue hardship on defendant.

Defendant relies upon numerous cases noting the unique importance of vaccination in medical personnel and first responders. The cases to this effect are indeed legion, and some have rejected plaintiff's proposed accommodations specifically. (See Def's Br. 18). But plaintiff here

has pleaded allegations crucial to the survival of this claim, including that defendant continued to rely upon the services of first responders from neighboring local government units, including of individuals who were in fact unvaccinated, and that defendant granted exemption requests made under the ADA. (Compl. ¶¶ 68–70, 89–91, 94). These pivotal facts undercut defendant's argument that any exemption from the policy, even for first responders, would impose undue hardship. The pleaded facts, taken as true, tend to show that the town was prepared to rely on unvaccinated first responders, even as it now argues that any such practice would have constituted an undue hardship.

Defendant also argues that permitting plaintiff to resign rather than be terminated was itself a reasonable accommodation. (Def's Br. 19–20). For this point, defendant relies upon Robinson v. Children's Hosp. Bos., No. CV 14-10263, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016). But Robinson involved different circumstances, such as the employee's refusal to cooperate with the employer's attempts to reach another accommodation, see id., and the court cannot agree that merely permitting an employee to resign rather than be fired is inherently a reasonable accommodation; such position would undercut the purposes of Title VII and contravene extensive authority recognizing constructive discharge as an adverse employment action sufficient for Title VII liability. See, e.g., Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994).

Further, many of the cases defendant relies upon were decided at summary judgment or on a motion for a preliminary injunction, at which phase the courts could issue decisions based on evidence beyond the pleadings. See, e.g., Bauer v. Summey, 568 F. Supp. 3d 573 (D.S.C. 2021); Together Emps. v. Mass General Brigham Inc., 573 F. Supp. 3d 412 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2021); Creger v. United Launch Alliance LLC, 571 F. Supp. 3d 1256 (N.D. Ala. 2021); Does 1-6 v. Mills, 566 F. Supp. 3d 34 (D. Me. 2021), aff'd, 16 F.4th 20 (1st Cir. 2021).

9

But this case is now in a Rule 12 posture, under which the facts noted above must be taken as true, and which are dispositive on this issue. Plaintiff's Title VII claim withstands defendant's motion.

2. Title VII Wrongful Termination/Constructive Discharge (Count II)

Defendant's only argument for the dismissal of plaintiff's standalone claim for constructive discharge in violation of Title VII is that it should fail for the same reasons as plaintiff's religious discrimination claim. (See Def's Br. 21). Because the court concludes that such claim survives, this argument does not succeed.

3. Title VII Retaliation (Count III)

A Title VII retaliation claim has three elements: 1) the employee engaged in protected activity, 2) the employer took adverse action against the employee, and 3) a causal connection existed between the protected activity and the adverse action. See Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 578 (4th Cir. 2015).

Plaintiff's complaint fails to allege any causal connection. The complaint recites that plaintiff made "complaints" about the policy and its effect on him and other employees, and that he requested an accommodation, which constitute protected activity. See id. at 577; (Compl. ¶¶ 42, 54). Plaintiff also suffered an adverse employment action as noted above. But this claim falters on the final element: causation. Plaintiff pleads that he was fired for his refusal to comply with the policy, rather than for his complaints or for the accommodation request itself. (See Compl. ¶¶ 77–81). Because plaintiff's own allegations defeat the basis for this claim, it fails.

4. Constitutional Claims (Counts IV, V).

    a. Equal Protection

To state an equal protection claim, a plaintiff must demonstrate different treatment from others with whom he is similarly situated, as a result of intentional discrimination; the court then

evaluates whether such disparity can be justified under the pertinent level of scrutiny. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff pleads that he was intentionally treated differently from other employees who received ADA-based exemptions. (Compl. ¶¶ 185–86). The court therefore evaluates this treatment under the proper level of scrutiny.

Most classifications are "generally benign" and will be upheld if they are rationally related to a legitimate governmental interest. Grimm v. Gloucester Cnty. Sch. Bd., 972 F.3d 586, 607 (4th Cir. 2020). In contrast, classifications based on, among other categories, race or religion, or which restrict fundamental rights, are inherently suspect and subject to strict scrutiny. See City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976).

Here, there is no fundamental right to refuse vaccination, so that potential prong of the path to strict scrutiny is foreclosed. See Jacobson v. Massachusetts, 197 U.S. 11, 25–26 (1905). Next, plaintiff does not plead an equal protection claim based upon religion, an inherently suspect classification, but rather based on vaccination status. (See Compl. ¶¶ 183–86 (discussing the town's tolerance of other, unvaccinated individuals but without mentioning those persons' religion(s))). In turn, courts across the country have recognized that discrimination based on vaccination status does not target a suspect class, and is subject to rational basis review. See, e.g., Bauer, 568 F. Supp. 3d at 597; McArthur v. Braband, 610 F. Supp. 3d 822, 839 (E.D. Va. 2022); see also Children's Health Defense, Inc. v. Rutgers, State Univ. of N.J., 93 F.4th 66, 84–88 (3d Cir. 2024); Dixon v. De Blasio, 586 F. Supp. 3d 171, 181 (E.D.N.Y. 2021), vacated on other grounds, No. 21-2666, 2022 WL 961191 (2d Cir. Mar. 28, 2022); Williams v. Brown, 567 F. Supp. 3d 1213, 1228 (D. Or. 2021); Halgren v. City of Naperville, 577 F. Supp. 3d 700, 753 (N.D. Ill. 2021).

11

Defendant's actions easily satisfy the rational basis standard, which requires plaintiff to negate "every conceivable basis" which might support the policy. See Thomasson v. Perry, 80 F.3d 915, 928 (4th Cir. 1996) (en banc). It points to interests in protecting public health and addressing the threats of disease transmission posed by persons in sensitive occupations such as first responders. (See Def's Br. 27–28). These arguments are sufficient to uphold the policy and the town's enforcement thereof under rational basis review.

The court further notes that plaintiff advances no argument in support of his Equal Protection claim. (See generally Pl's Br.). For the above reasons, defendant's motion defeats this claim.

      b.      Free Speech Clause

Defendant argues that plaintiff's Free Speech Clause claim must fail because plaintiff was prohibited from delivering speech only pursuant to his official duties. The court disagrees.

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Garcetti v. Ceballos, 547 U.S. 410, 419 (2006). "At the same time . . . a citizen who works for the government is nonetheless a citizen. The First Amendment limits the ability of a public employer to leverage [employment] to restrict . . . the liberties employees enjoy in their capacity as private citizens." Id. So long as employees speak as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate effectively. Id.

Accordingly, the court must balance the interests of the employee as a citizen in commenting on matters of public concern against the town's interests as an employer in promoting the efficiency of the public service it performs through its employees. Hunter v. Town of Mocksville, N.C., 789 F.3d 389, 396 (4th Cir. 2015). This process involves two questions: the

first is whether the employee spoke as a citizen on a matter of public concern; if the answer is yes, the court must determine whether such interest is outweighed by the government's interest in providing effective public services. Id.

The first question involves a "practical inquiry" into the employee's daily professional activities to determine whether the speech at issue occurred in the normal course of those duties. Id. For example, in one case the Supreme Court held that an employee's testimony in a judicial proceeding was citizen speech, even when the testimony related to public employment and recounted information learned during that employment. Lane v. Franks, 573 U.S. 228, 238 (2014). In another, a public school teacher who used information learned during employment to criticize the school board was deemed to have engaged in citizen speech. Pickering v. Bd. of Ed. of Tp. High School Dist. 205, Will Cnty., Ill., 391 U.S. 563, 570–72 (1968).

Plaintiff pleads here that he was prevented from speaking on the policy, which by its nature qualifies as a matter of public concern. Further, based on the allegations in the complaint, plaintiff wished to speak as a citizen, not as an employee. Defendant does not argue that speaking to the town council was part of plaintiff's daily duties, and controlling authority evaluates speech with great granularity: the Fourth Circuit has held speech protected under this framework when even narrowly defined, highly specific speech was outside the plaintiff's duties. For example, in Hunter, the Fourth Circuit held that the plaintiff's complaints to the Governor of North Carolina's office about local police corruption was outside the plaintiff's duties, because nothing suggested that the plaintiff's duties "included calling the Governor's Office for any purpose." Hunter, 789 F.3d at 399. Such reasoning controls the first question here: there is no allegation or suggestion that plaintiff's duties as a fire department lieutenant included speaking to the town council about anything. Plaintiff wished to speak as a citizen, not as an employee, on a matter of public concern.

13

Case 5:23-cv-00663-FL   Document 19   Filed 08/06/24   Page 13 of 17

Next, defendant does not offer any countervailing government interest, which suffices permit this claim to proceed past the Rule 12 stage. See id. at 400 (holding this inquiry satisfied because defendant town had not argued for any government interest).

Instead, defendant advances arguments unique to a First Amendment retaliation claim. (See Def's Br. 28–29) But plaintiff expressly disclaims such theory. (See Pl's Br. (DE 16) 29). These arguments have no bearing on plaintiff's claim, which is simply that he was deprived of an opportunity to exercise his speech rights as a citizen. (See Compl. ¶¶ 191–202). Defendant also argues that the decision to prohibit plaintiff's speech here was not the product of any official policy or custom. (Def's Br. 29). However, plaintiff pleads that the town manager made this decision, and that he was an official policymaker for the town, whose decisions were also ratified by the town council. (See Compl. ¶¶ 4, 6).

Plaintiff's Free Speech Clause claim thus survives defendant's motion.

### c. Free Exercise Clause

Finally, plaintiff asserts a claim for violation of the Free Exercise Clause of the First Amendment. The court concludes that this claim weathers defendant's motion.

The Supreme Court's decision in Tandon v. Newsom, 593 U.S. 61 (2021) is dipositive on this claim, at least at this stage. In Tandon, the Supreme Court held that government regulations trigger strict scrutiny under the Free Exercise Clause whenever they treat "any comparable" secular activity more favorably than religious exercise. Id. at 62. Whether two activities are "comparable" "must be judged against the asserted government interest that justifies the regulation at issue." Id.

Here, the town's asserted interests were in maintaining a vaccinated force of first responders to prevent the spread of COVID-19. (See Def's Reply Br. (DE 17) 7–8). As discussed above, however, the town employed the services of unvaccinated first responders, and permitted

14

Case 5:23-cv-00663-FL   Document 19   Filed 08/06/24   Page 14 of 17

secular exemptions from the policy. (Compl. ¶¶ 68, 70, 89–91, 94). Plaintiff therefore pleads that the town treated not just a comparable secular activity but the very request at issue here more favorably when made on non-religious grounds, because the same asserted government interest underlay the town's divergent actions on religious and non-religious accommodation requests and employment of unvaccinated first responders from other towns. See Tandon, 593 U.S. at 62. The town's enforcement of the policy therefore triggers strict scrutiny on this claim. See id.

To satisfy strict scrutiny, defendant's actions must have furthered a compelling government interest, and must have been narrowly tailored in pursuit of those interests. See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993).

Preventing the spread of COVID-19 is a compelling government interest, and plaintiff does not attempt to argue otherwise. Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 18 (2020). However, the policy falters, in this procedural posture, at the "narrowly tailored" requirement. In this context, narrow tailoring requires the town to show that measures less restrictive of religion could not address its interest in reducing the spread of COVID. Tandon, 593 U.S. at 63. The town attempts to argue this point by citing various cases holding that testing, PPE, and other precautions did not adequately serve a government actor's interest in preserving public health against COVID. (See Def's Reply Br. 8). But these cases were decided at summary judgment or other postures in which the various courts could assess medical and scientific evidence offered by the involved government actors outside the pleadings. See Bauer, 568 F. Supp. 3d 573, 581, 599; Mills, 566 F. Supp. 3d at 54; Petersen v. Snohomish Regional Fire & Rescue, C22-1674, 2024 WL 278973, at *1, *6–7 (W.D. Wash. Jan. 25, 2024). In the Rule 12 posture, in contrast, the court must take as true all of plaintiff's factual assertions, including that he offered to employ numerous other equally effective precautions, which request the town denied. (Compl. ¶¶ 75, 100).

15

Plaintiff therefore has alleged facts supporting a plausible inference that the policy was not narrowly tailored as required by Tandon.

The town relies upon We The Patriots USA, Inc. v. Hochul, 17 F.4th 266 (2d Cir. 2021), as well as the formidable array of district court opinions mentioned at various points above. In Hochul, the Second Circuit issued a meticulous, thoroughly reasoned opinion holding that a vaccine mandate did not fall within Tandon under the facts presented in a motion for a preliminary injunction. Id. at 272, 284–290. However, just like the district court opinions noted above, the Second Circuit drew heavily upon medical and scientific evidence from outside the pleadings mustered by the parties as part of preliminary injunction proceedings. See id. at 284–90; see also Doe v. San Diego Unified Sch. Dist., 19 F.4th 1173, 1177–78 (9th Cir. 2021) (employing a similar analysis under Tandon); Resurrection Sch. v. Hertel, 11 F.4th 437, 457–58 (6th Cir. 2021) (similar), vacated on other grounds, 35 F.4th 524 (6th Cir. 2022) (en banc). Defendant's arguments on Hochul are better calibrated for summary judgment, not a Rule 12 motion.

In sum, plaintiff's Free Exercise Clause claim survives defendant's motion to dismiss under the principles pronounced in Tandon.

5.  Declaratory Judgment (Count VI)

Finally, defendant asks the court to dismiss plaintiff's claim for declaratory judgment as duplicative.

Courts consistently dismiss claims for declaratory judgment which seek resolution of legal issues that necessarily will be decided through litigating the other causes of action. See, e.g., Tate v. Am. Gen. Life Ins. Co., 627 F. Supp. 3d 480, 498–99 (D. Md. 2022) (collecting cases); Hardnett v. M&T Bank, 204 F. Supp. 3d 851, 863 (E.D. Va. 2016); Chevron USA Inc. v. Apex Oil Co., Inc., 113 F. Supp. 3d 807, 824–25 (D. Md. 2015); We CBD, LLC v. Planet Nine Private Air, LLC,

No. 3:21-cv-352, 2022 WL 2334984, at *4 (W.D.N.C. June 28, 2022). Plaintiff presents no authority to the contrary.

Here, plaintiff asks for declaratory relief that the policy, and personnel actions taken under it, were unlawful. These contentions necessarily will be decided in the resolution of the other claims, such that declaratory relief would serve no independent or useful purpose in this action. The court therefore grants defendant's motion as it seeks dismissal of this claim.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART as follows. The motion is granted as to the following claims, which are DISMISSED for failure to state a claim under Rule 12(b)(6): 1) count III for retaliation in violation of Title VII; 2) count IV insofar as it asserts a claim for violation of the Equal Protection Clause; and 3) count VI for declaratory relief. Defendant's motion otherwise is DENIED. The stay of initial scheduling activities imposed February 23, 2024, is hereby LIFTED. An initial order on scheduling shall issue separately.

SO ORDERED, this the 6th day of August, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge